IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>   v.<br><br>IBN MUHAMMAD,<br><br>      Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Criminal Action<br>No. 14-cr-136 (JBS)<br><br>**OPINION** |

APPEARANCES:

Paul J. Fishman, United States Attorney
     By: Matthew T. Smith, Assistant U.S. Attorney
OFFICE OF THE U.S. ATTORNEY
401 Market Street, 4th Floor
Camden, NJ 08101
     Attorney for the United States

David S. Rudenstein, Esq.
9411 Evans Street
Philadelphia, PA 19115
     Attorney for Defendant

**SIMANDLE, Chief Judge:**

# I.   INTRODUCTION

Defendant Ibn Muhammad stands accused of one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, seven counts of bank fraud against various financial institutions in violation of 18 U.S.C. §§ 1344 & 2, and two counts as a felon in possession of two firearms in violation of 18 U.S.C. § 922(g)(1). The Indictment, filed on March 19, 2014,

alleges that Muhammad and co-conspirators Joseph Reevey and Ivory Vernon altered or forged checks stolen from businesses in nearby industrial parks and recruited others to cash the stolen checks at financial institutions in New Jersey, Pennsylvania, and Delaware.

Before the Court is Defendant's pretrial omnibus motion [Docket Item 33]. The Court will address each aspect of the motion in turn.

## II.   BACKGROUND

The Indictment describes a scheme where Defendant Muhammad, Defendant Reevey, and Defendant Vernon, along with other co-conspirators, stole over 100 business checks from the United States Mails and converted them to their own use. (Indictment [Docket Item 1] ¶ 5.) Muhammad would alter the stolen checks and forge the names of the payees to match those of individuals Reevey and co-conspirator Warner recruited to present the forged checks to banks. (Id. ¶¶ 6-7.) Reevey, Vernon, and others would drive the recruited check cashers to banks in New Jersey, Pennsylvania, and Delaware. (Id. ¶ 8.) These individuals cashed or attempted to cash 45 altered checks resulting in over $100,000 in losses to the victim banks. (Id. 10.) According to the affidavit accompanying the search warrant application in of Muhammad's home, at the time of this alleged scheme, Muhammad was home on pretrial release pending sentencing before this

Court after pleading guilty to mail theft and bank fraud in a similar scheme. (Shannon Aff. ¶ 3.)

Both of Muhammad's charged co-defendants have pleaded guilty [Docket Item 27 – Vernon; Docket Item 54 – Reevey], and as such neither joins his omnibus motion. The Government raises no motions at this time.

Defendant's omnibus motion contains ten motions regarding pretrial motions, discovery, and evidence. Specifically, Defendant seeks permission to file additional pretrial motions if necessary; to preclude the Government from admitting statements of co-conspirators; to order the Government to disclose Jencks Act information on co-defendants; to order the Government to reveal the identities of confidential informants and information on their agreements with the Government pursuant to Giglio; to gain access to Grand Jury transcripts; to exclude his prior convictions under Fed. R. Evid. 609(a)(1) and (2); to suppress or redact any statements of co-defendants to be used at trial pursuant to Bruton; to suppress evidence seized from his residence; permission to join all motions by co-defendants; and to suppress any post-arrest statements. The Court heard oral argument on these motions and now holds as follows.

## III. DISCUSSION

### 1. Additional motions

Defendant first seeks an order permitting him to file additional pretrial motions if the need arises. (Def. Mot. at 2.) Federal Rule of Criminal Procedure 12(c) permits the Court to consider untimely pretrial motions if the party shows good cause. Fed. R. Crim. P. 12(c)(3). Because Defendant has not yet identified any additional motions he would like to raise with the Court, and because the Rules will permit him to file additional motions if necessary, this order is superfluous at this time. This motion is dismissed as moot.

**2. Co-conspirator statements**

Next, Defendant seeks a pretrial hearing at which the Government would be required to prove evidence of, and his participation in, the check cashing conspiracy before admitting evidence of co-conspirator statements at trial pursuant to Fed. R. Evid. 801(d)(2)(E). (Def. Mot. at 3.)

The Supreme Court held in <u>Bourjaily</u> that courts may admit into evidence a co-conspirator's statement if the proponent shows, by a preponderance of the evidence, that: (1) a conspiracy existed (2) involving the declarant and the defendant; (3) the statement was made during the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy. <u>Bourjaily v. United States</u>, 483 U.S. 171, 175 (1987) (citing Fed. R. Evid. 801(d)(2)(E)). Muhammad's assertion that "the existence of the conspiracy and the connection of the

4

Declarant and the Defendant to it must be established by independent evidence" only is incorrect. (Def. Mot. at 5, citing Glasser v. United States, 315 U.S. 60 (1942).) The court is not restricted to independent evidence of the existence of or defendant's participation in a conspiracy and may consider the hearsay statements sought to be admitted. Bourjaily, 483 U.S. at 181.[1]

This determination must be made before evidence is admitted, but not necessarily before it is used at trial. The Supreme Court "express[ed] no opinion on the proper order of proof that trial courts should follow in concluding that the preponderance standard has been satisfied in an ongoing trial." Id. at 176 n. 1. The Third Circuit has consistently upheld district court decisions to conditionally admit co-conspirator testimony subject to later connection. United States v. Gambino, 926 F.2d 1355, 1360-61 (3d Cir. 1991); United States v. Ammar, 714 F.2d 238, 245-47 (3d Cir. 1983); In re Fine Paper Antitrust Litigation, 685 F.2d 810, 820-21 (3d Cir. 1982). In support of

---

[1] While neither the Supreme Court nor the Third Circuit has addressed whether hearsay statements alone can support a finding that a conspiracy existed, see Bourjaily, 483 U.S. at 181 and United States v. McGlory, 968 F.2d 309, 334 (3d Cir. 1992), the Government indicated in its brief that it will rely at trial on additional non-hearsay evidence, including testifying co-conspirators and the testimony of law enforcement officers, to prove the existence of the conspiracy. (Gov. Opp'n at 8.) Muhammad's fears of "bootstrapping" hearsay into competent evidence are exaggerated. (Def. Mot. at 5.)

his request for a pretrial hearing, Muhammad cites to <u>United States v. Continental Group, Inc.</u>, 603 F.2d 444 (3d Cir. 1979), a pre-<u>Bourjaily</u> case noting the dangers of admitting co-conspirator evidence before evidence of the conspiracy has been proven. <u>Id.</u> at 457. However, the Third Circuit noted in that case that "the control of the order of proof at trial is a matter committed to the discretion of the trial judge" and held that it was not an abuse of discretion to conditionally admit co-conspirator statements subject to later connection. <u>Id.</u> at 456-57.

The Court will wait to make the threshold determination about Defendant's participation in the conspiracy until the close of all the Government's evidence, and will conditionally admit evidence of statements of co-conspirators made during and in furtherance of the conspiracy, as allowed by <u>Bourjaily</u>. Defendant's motion is denied.

### 3. <u>Jencks</u> Act materials

Third, Defendant requests an order requiring the Government "to disclose any and all proffers regarding co-defendants-turned-informants." (Def. Mot. at 8.) The Government asserts that it will disclose all <u>Jencks</u> Act materials "no later than one week before the witness for whom there is <u>Jencks</u> material testifies." (Gov. Opp'n at 10.) This satisfies the Government's burden of disclosure. This motion is denied as moot.

6

**4. Confidential informants**

Defendant also seeks disclosure of the identity of all confidential informants and information on all agreements between the Government and informants. (Def. Mot. at 9.) The Government denies using "traditional confidential informants." (Gov. Opp'n at 11.) The check cashers who worked with Reevey and Vernon and assisted the Government's investigation had no formal agreements with the Government and were paid nothing for their help. (Id.) To the extent that access to their identities should be governed by the rules on confidential informants, Defendant is not entitled to this information.

The Government is privileged to not disclose the identity of confidential informants. Roviaro v. United States, 353 U.S. 53, 59 (1957). That privilege breaks "where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Id. at 60-61. Whether disclosure is required depends upon "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id. at 62. It is the defendant's burden to show need for the disclosure. United States v. Jiles, 658 F.2d 194, 197 (3d Cir. 1981). "The mere speculation that an eyewitness may have some evidence helpful to defendant's case is not sufficient to show the

7

specific need required." Id. at 197; United States v. Johnson,
677 F.3d 143, 143 (3d Cir. 2012).

In support of his motion, Defendant alleges only that the
confidential witnesses "possess a wealth of exculpatory
information concerning this Defendant" because they were "active
participants in the underlying offense" and provided no further
details at oral argument. (Def. Mot. at 11.) His claim is only
"mere speculation" that the Third Circuit has held insufficient
to show need for disclosure in Jiles, supra.

However, with regards to Defendant's request for
information on any agreements between the check cashers and the
Government, the Government responded that it will disclose
impeachment material pertaining to any trial witnesses no later
than one week before the witness for whom there is Giglio
material testifies. (Gov. Opp'n at 12.) Upon this understanding,
this motion is denied as moot.

**5. Grand jury transcripts**

Next, Defendant seeks an order granting him access to grand
jury transcripts. (Def. Mot. at 12.) Federal Rule of Criminal
Procedure 6(e) permits courts to authorize disclosure of grand
jury matters to defendants who show "that a ground may exist to
dismiss the indictment because of a matter that occurred before
the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).

Grand jury proceedings are generally kept secret except where there are grounds to show a party's "compelling necessity" with particularity. United States v. Proctor & Gamble Co., 356 U.S. 677, 682 (1958); United States v. McDowell, 888 F.3d 285, 289 (3d Cir. 1989). Only after a particularized need is shown may a court balance the requesting party's need for the information against the public interest in grand jury secrecy. Proctor & Gamble, 356 U.S. at 683; McDowell, 888 F.3d at 289. There is a presumption of regularity in grand jury proceedings. United States v. R. Enters., Inc., 498 U.S. 292, 300 (1991); United States v. Educational Development Network Corp., 884 F.2d 737, 740 (3d Cir. 1989)("It is well-settled in this Circuit that grand jury proceedings are generally accorded a presumption of regularity and that a request for inspection of grand jury materials must be bottomed on more than an allegation that improper conduct has occurred and that discovery will verify this belief.").

Defendant acknowledges in his brief that he must demonstrate a particularized need for the grand jury transcripts, but does not provide one. He seeks access to the transcripts in order "to determine whether prosecutorial abuses led to the present indictment, and whether the Government had valid grounds to indict the Defendant." (Def. Mot. at 13.) This request is merely a "fishing expedition by the defendant," which

the Third Circuit has held does not meet the particularized need standard. United States v. Weingold, 69 Fed. Appx. 575, 579 (3d Cir. 2003); United States v. Minerd, 299 Fed. Appx. 110, 111 (3d Cir. 2008) (holding that request for grand jury transcripts "to show that the government committed fraud before the grand jury" was a "vague allegation . . . [that] does not demonstrate a particularized need for disclosure."). Therefore, the Court will deny this motion.

**6. Prior convictions**

Defendant also seeks an order precluding the Government from introducing his prior convictions if he chooses to testify at trial. (Def. Mot. at 14.) The Government will seek to impeach Defendant with three prior convictions: (1) a conviction for possession with intent to distribute a controlled dangerous substance in the New Jersey Superior Court-Camden County punished with a term of 18 months incarceration on July 29, 2008; (2) a conviction for aggravated assault in the New Jersey Superior Court-Camden County punished with a term of 18 months imprisonment on July 29, 2008; and (3) a guilty plea to bank fraud and theft of mail in this Court on July 15, 2014, for which he is currently serving a sentence of 135 months. (Gov. Opp'n at 14.)

Federal Rule of Evidence 609(a) governs the admissibility of prior convictions for impeachment purposes. The Rule treats

10

Defendant's prior conviction for bank fraud separately from his convictions for drug possession and assault. Impeachment evidence of prior crimes involving a "dishonest act or false statement" are subject to the specific provision of Rule 609(a)(2) of the Federal Rules of Evidence. Evidence of these crimes "must" be admitted if the defendant testifies at trial. Fed. R. Evid. 609(a)(2); Cree v. Hatcher, 969 F.2d 43, 37 (3d Cir. 1992) ("Unlike other crimes evidence of which is admissible for the purpose of impeachment, evidence of crimes involving dishonesty or false statements is automatically admissible; the district court is without discretion to weigh the prejudicial effect of admitting the evidence against its probative value."). The Government and Defendant agree that his bank fraud conviction is one of these significant crimes of falsehood, and will be admitted for impeachment if Defendant testifies.

Other prior convictions are admissible as impeachment evidence against a testifying defendant under Rule 609(a)(1)(B) of the Federal Rules of Evidence when (1) the crime is punishable by death or imprisonment over one year, and (2) the court determines that the probative value of admitting the evidence outweighs its prejudicial effect. Fed. R. Evid. 609(a)(1)(B). The Third Circuit has identified four factors to consider when weighing the probative value against the prejudicial effect of a prior conviction: "(1) the kind of crime

involved; (2) when the conviction occurred; (3) the importance of the [defendant's] testimony to the case; (4) the importance of the credibility of the defendant." Gov't of Virgin Islands v. Bedford, 671 F.2d 758, 761 n. 4 (3d Cir. 1982). At oral argument, the Government conceded that Defendant's assault conviction is not probative of his credibility and that the risk of prejudice outweighs its probative value, and agreed not to introduce that prior conviction should Defendant decide to testify at trial. However, the parties disagree about the probative value of Defendant's prior conviction for drug possession. The Court cannot accurately weigh these factors until he decides whether he intends to testify, and until the Court knows more about the circumstances of this conviction and what it says about Defendant's credibility. As such, the Court will reserve decision on this aspect of the motion until trial.

### 7. **Bruton** material

Next, Defendant requests an order requiring the Government to identify and produce in their entirety all statements and confessions made by co-defendants which it intends to use at trial. (Def. Mot. at 16.) Now that both co-defendants have entered guilty pleas, there is no basis for admitting a co-defendant's confession at trial. If the co-defendant testifies as a witness for the Government, he will be subject to cross-

12

examination and there is no <u>Bruton</u> issue. This motion is
therefore dismissed as moot.

### 8. Probable cause in warrant application

Defendant also seeks suppression of evidence seized from
his residence at 1218 Decatur Street, Camden, New Jersey,
because the affidavit submitted in support of the application
for a search warrant "was misleading because of material
omissions and misstatements and for lack of probable cause."
(Def. Mot. at 17.)

Muhammad abandoned the first part of this motion at oral
argument, acknowledging that he could point to nothing in the
affidavit that constitutes a material omission or misstatement.
Even where an affidavit in application for a search warrant is
supported by ample probable cause on its face, a defendant may,
in limited circumstances, challenge the veracity of the
affidavit. <u>Franks v. Delaware</u>, 438 U.S. 134, 155-56 (1978). To
bring such a challenge to an evidentiary hearing, a defendant
must make a "substantial preliminary showing," <u>id.</u> at 155,
including "allegations of deliberate falsehoods or of reckless
disregard for the truth, and those allegations must be
accompanied by an offer of proof." <u>Id.</u> at 171. In a request for
a <u>Franks</u> hearing, a defendant "cannot rest on mere conclusory
allegations […] but rather must present an offer of proof
contradicting the affidavit, including materials such as sworn

affidavits or otherwise reliable statements from witnesses."
United States v. Yusuf, 461 F.3d 374, 383 n. 8 (3d Cir. 2006).
Defendant has proffered no examples of material falsehoods or
omissions, and thus there is no basis for convening a Franks
hearing to probe the veracity of the affidavit that supported
the search warrant application.

Instead, Defendant now argues exclusively that the
affidavit submitted by Postal Inspector Shannon was not
sufficiently supported by probable cause.

Probable cause is a fluid concept based on a "common-sense"
totality-of-the-circumstances analysis. Illinois v. Gates, 462
U.S. 213, 238 (1983). The issuing magistrate must be satisfied
that the affidavit describes circumstances indicating a "fair
probability that contraband or evidence of a crime will be found
in a particular place." Id.; United States v. Conley, 4 F.3d
1200, 1205 (3d Cir. 1993). The magistrate is "entitled to draw
reasonable inferences about where evidence is likely to be kept,
based on the nature of the evidence and the type of offense."
United States v. Whitner, 219 F.3d 289, 297 (3d Cir. 2000).
Reviewing courts should give a magistrate's determination of
probable cause "great deference." Gates, 462 U.S. at 236;
Conley, 4 F.3d at 1205.  An issuing magistrate's determination
of probable cause will be upheld where there is a substantial
basis for concluding that a search would uncover evidence of

14

wrongdoing. <u>Gates</u>, 462 U.S. at 236; <u>Conley</u>, 4 F.3d at 1205. The Supreme Court has directed that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." <u>United States v. Ventresca</u>, 380 U.S. 102, 109 (1965).

Defendant raises three broad arguments about why Inspector Shannon's affidavit is defective: that nothing reflects probable cause to search 1218 Decatur Street "as it pertains to <u>THIS CASE</u>" (Def. Mot. at 20, emphasis included); that nothing reflects probable cause to connect Ibn Muhammad with this case (<u>id.</u> at 21); and that the Government has done "nothing to establish the veracity of its unnamed witnesses that it is relying on." (<u>Id.</u> at 22.)

First, Defendant argues that circumstances as described in the affidavit do not give rise to probable cause to connect 1218 Decatur Street with criminal activity. In support, he points to the fact that none of the mail seized upon co-defendant Reevey's arrest was addressed to Decatur Street (Def. Mot. at 21); that Inspector Shannon was directed by a confidential witness to Decatur Street but that the affidavit does not specify which number (<u>id.</u>); and that when law enforcement saw Derrick Warner (another member of the alleged check cashing scheme) going into 1218 Decatur Street, "the Affiant did not, and could not possibly, swear in the Affidavit as to what occurred inside the

residence." (Id.) At oral argument, Defendant argued that the
Government's investigation could not confirm that the forged
checks Warner gave to check cashers to deposit came from 1218
Decatur Street, because no check cashers ever went into the
house during Inspector Shannon's surveillance.

"Direct evidence linking the place to be searched to the
crime is not required for the issuance of a search warrant.
Instead, probable cause can be, and often is, inferred." Conley,
4 F.3d at 1207. Defendant must concede that during Inspector
Shannon's surveillance, law enforcement witnessed on two
occasions Warner entering 1218 Decatur Street and exiting a few
minutes later before giving an altered business check to
confidential witness Check Cashers. (Shannon Aff. ¶ 10, p. 9; ¶
11, p. 10.) Moreover, although one of the Check Cashers could
only direct Shannon to the general area where Derrick Warner
picked up the forged checks from someone identified as
"Bossman," the witness could narrow down the location to block
1209 through 1235 Decatur Street. (Id. at ¶ 9, pp. 8-9.)
Additionally, Inspector Shannon knew through a check of the U.S.
Mail that 1218 Decatur Street is associated with Ibn Muhammad,
who was on pre-trial release pending sentencing after pleading
guilty to bank fraud and theft of mail charges arising from a
scheme similar to the one alleged here. (Id. at ¶ 3, pp.3-4.) He
knew through interviews with other check cashers that Warner and

co-defendant Reevey worked with others as part of their scheme. (Id. at ¶ 9 (a)-(f), pp. 4-8.) And "based on [his] education, training, and experience," Inspector Shannon knew that "those engaged in schemes such as the one described herein often secrete stolen checks, stolen mail, and tools or materials used to alter checks at residences to avoid detection by law enforcement and for safekeeping." (Id. ¶ 13, p. 10.) Taking these facts together and drawing normal inferences, as this Court is entitled to do, Inspector Shannon's affidavit suggests that there was a "fair probability" that evidence of bank fraud and theft of mail would be found at 1218 Decatur Street.

Next, Defendant argues that there was no probable cause to search his home because "the facts [in the affidavit] may have related to co-defendants who were engaged in alleged illegal activity on the street, but did not relate to activities of the Defendant at his home on Decatur Street." (Def. Mot. at 22.) This argument misses the mark. "Search warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found. United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993). Inspector Shannon's affidavit fairly establishes probable cause to find evidence of bank fraud and theft of mail at 1218 Decatur Street. Even assuming arguendo that no probable cause existed to believe that Muhammad himself was involved in the

17

alleged check cashing scheme, there was probable cause to
believe that evidence of the illegal activities would be found
on the premises. See Conley, 4 F.3d at 1206. The circumstances
stated in the affidavit strongly pointed to 1218 Decatur Street
as a place where evidence of illegal activity was likely to be
found. Moreover, even if this were a closer call, the issuing
judge's finding of such a nexus to this property was reasonable
and is entitled to "great deference." Gates, 462 U.S. at 236.

Finally, Defendant argues that "the Government has done
nothing to establish the veracity of its unnamed witnesses that
it is relying on." (Def. Mot. at 22.) "A magistrate may issue a
search warrant relying primarily or in part upon the statements
of a confidential informant, so long as the totality of the
circumstances gives rise to probable cause." United States v.
Stearn, 597 F.3d 540, 555 (3d Cir. 2010). The Supreme Court
required in Gates that courts analyze the value of an
informant's tip under the totality of the circumstances,
including inquire into the veracity, reliability, and basis of
knowledge of witnesses when evaluating an affidavit for probable
cause. Gates, 462 U.S. at 233. But what Defendant misses is
that, in an affidavit, "the government is generally required to
show by the totality of the circumstances either that the
informant has provided reliable information in the past or that
the information has been corroborated through independent

18

investigation." <u>United States v. Yusuf</u>, 461 F.3d 374, 384 (3d Cir. 2006) (emphasis added).

Here, because Inspector Shannon was able to corroborate the statements of at least nine different check cashers, their nonexistent track record of providing useful information is less important. (Shannon Aff. at ¶¶ 9(a)-(f) pp. 4-8; ¶ 9, p. 8; ¶ 10, p. 9; ¶ 11, p. 10.) The check cashers all gave law enforcement similar accounts of their dealings with Reevey, Warner, and their co-conspirators, despite the fact that they did not know one another. (<u>Id.</u> at ¶ 9, p. 4.) Moreover, their information proved reliable after additional investigation conducted by law enforcement. (<u>Id.</u> at ¶ 9 n. 1, p. 4.) In addition, Inspector Shannon indicates that "many of the Check Cashers were arrested and charged with crimes as a result of their participation in the scheme." (<u>Id.</u> at ¶ 9, p. 4.) Declarations by an informant against his penal interest, as in the present case, are considered reliable. <u>Agnellino v. State of New Jersey</u>, 493 F.2d 714, 726 (3d Cir. 1974.) These details all provide a substantial basis for Judge Schneider to have issued a search warrant based on Inspector Shannon's affidavit.

Thus, the Court will deny Defendant's motion to suppress evidence seized from his residence because the affidavit submitted to support the application for a search warrant was supported by sufficient probable cause and because there is no

basis under <u>Franks</u> to question the truthfulness and completeness of the factual statements in the affidavit.

### 9. Joining co-defendant motions

Defendant also seeks leave of court to join any pretrial motions filed on behalf of co-defendants Reevey and Vernon. (Def. Mot. at 23.) Because both Reevey and Vernon have pleaded guilty, this motion is dismissed as moot.

### 10.  Suppression of post-arrest statements

Finally, Defendant moves for an order suppressing any and all statements he made subsequent to his arrest. (Def. Mot. at 24.) He alleges that he was never offered <u>Miranda</u> warnings and his statements were coerced and involuntary. (Def. Mot. at 24-25.) The Government argues that it is unaware of any post-arrest statements made by Muhammad or any of his co-defendants. (Gov. Opp'n at 21.) This motion is dismissed as moot.

## IV.  CONCLUSION

An accompanying Order will be entered.


 **October 13, 2015**                              **s/ Jerome B. Simandle**
Date                                               JEROME B. SIMANDLE
                                                   Chief U.S. District Judge

20