IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Criminal Action No. 14-cr-136 (JBS) |
| IBN MUHAMMAD, | **OPINION** |
| Defendant. | |

APPEARANCES:

Paul J. Fishman, United States Attorney
      By: Matthew T. Smith, Assistant U.S. Attorney
OFFICE OF THE U.S. ATTORNEY
401 Market Street, 4th Floor
Camden, NJ 08101
      Attorney for the United States

Edward F. Borden, Jr., Esq.
EARP COHN, PC
20 Brace Road
4th Floor
Cherry Hill, NJ 08034
      Attorney for Defendant

**SIMANDLE, Chief Judge:**

**I. INTRODUCTION**

     Defendant Ibn Muhammad stands accused of one count of
conspiracy to commit bank fraud in violation of 18 U.S.C. §
1349, seven counts of bank fraud against various financial
institutions in violation of 18 U.S.C. §§ 1344 & 2, and two
counts as a felon in possession of two firearms in violation of

18 U.S.C. § 922(g)(1). The Indictment, filed on March 19, 2014, alleges that Muhammad and co-conspirators Joseph Reevey and Ivory Vernon altered or forged checks stolen from businesses in nearby industrial parks and recruited others to cash the stolen checks at financial institutions in New Jersey, Pennsylvania, and Delaware. Before the Court are (1) the Government's motion to admit certain evidence under Fed. R. Evid. 404(b) [Docket Item 75], and (2) Defendant's motion for reconsideration of the denial of his previous motion to suppress. [Docket Item 85.] For the following reasons, the Court will grant in part and deny in part the 404(b) Government's motion and deny Defendant's renewed suppression motion.

## II.   BACKGROUND

The Indictment describes a scheme where Defendant Muhammad, Defendant Reevey, and Defendant Vernon, along with other co-conspirators, stole over 100 business checks from the United States Mails and converted them to their own use. (Indictment [Docket Item 1] ¶ 5.) The Indictment alleges that Muhammad would alter the stolen checks and forge the names of the payees to match those of individuals Reevey and co-conspirator Warner recruited to present the forged checks to banks. (Id. ¶¶ 6-7.) Reevey, Vernon, and others would drive the recruited check cashers to banks in New Jersey, Pennsylvania, and Delaware. (Id. ¶ 8.) These individuals cashed or attempted to cash 45 altered

checks resulting in over $100,000 in losses to the victim banks. (Id. 10.) According to the affidavit accompanying the search warrant application for a search of Muhammad's home, at the time of this alleged scheme, Muhammad was home on pretrial release pending sentencing before this Court after pleading guilty to mail theft and bank fraud in a similar scheme (United States v. Muhammad, Crim. No. 12-789 (JBS), the "Prior Conspiracy"). (Shannon Aff. ¶ 3.)

Before the Court are the Government's motion to admit certain evidence of "other crimes, wrongs or acts" under Fed. R. Evid. 404(b) and Defendant's motion for reconsideration of the denial of his motion to suppress evidence seized from his home. The Court heard oral argument on these motions on March 14, 2016, and now holds as follows.

**III. DISCUSSION**

**A. Government's 404(b) Motion**

Evidence of "other crimes, wrongs, or acts" is admissible under F. R. Evid. Rule 404(b) where (1) the evidence is probative of a material issue other than character; (2) the evidence is relevant under Rule 402; (3) the potential for unfair prejudice does not substantially outweigh the evidence's probative value, pursuant to Rule 403; and (4) the court issues a limiting instruction to the jury under Rule 105 if so requested. Huddleston v. United States, 485 U.S. 681, 691

(1988); United States v. Cross, 308 F.3d 308, 320-21 (3d Cir. 2002). The Court must pay particular attention to the third step of the analysis because all prior bad acts evidence is inherently prejudicial to at least some degree; the issue is whether such prejudice is "unfair" given its probative value as evidence of a disputed element of the crime charged. United States v. Caldwell, 760 F.3d 267, 277 (3d Cir. 2014).

The Government now seeks admission of documentary and testimonial evidence from Defendant's Prior Conspiracy pursuant to Rule 404(b), Fed. R. Evid., including limited testimony by Postal Inspector Brian Shannon regarding Defendant's involvement in the Prior Conspiracy; copies of checks recovered from banks in the Prior Conspiracy, the Current Conspiracy, and a search of 1218 Decatur Street; and redacted audio of a recorded confession by Defendant upon his January 2012 arrest for the Prior Conspiracy.[1] The Government argues that this evidence will be

_____

[1] The Government initially sought admission of the following additional Rule 404(b) evidence by its motion: (1) certain testimony regarding Defendant's involvement in the Prior Conspiracy; (2) copies of checks recovered from banks in the Prior Conspiracy, the Current conspiracy, and a search of 1218 Decatur Street; (3) a recorded statement by Defendant upon his January 2012 arrest for the Prior Conspiracy; (4) a written statement by Defendant upon his January 2012 arrest for the Prior Conspiracy; and (5) excerpts from his guilty plea to the Prior Conspiracy before this Court in December 2012. The Government agreed at the March 14 hearing to restrict which 404(b) evidence it would seek to use in its case in chief to Items (1), (2) and (3), above. The Court will deny the Government's motion without prejudice as to the other pieces of

4

introduced for the purpose of proving intent, plan, knowledge, and absence or mistake or accident, because it tends to show that Defendant had the requisite knowledge and intent for the charged offenses of bank fraud and conspiracy to bank fraud, that it was <u>Defendant</u> who joined and participated in the conspiracy while under house arrest, and that there is no innocent explanation for the paraphernalia found at 1218 Decatur Street. (Gov. Br. at 11-12.)

Defendant responds that the proffered evidence should be excluded as unfairly prejudicial. Defendant contends that the Government is in possession of many other pieces of less prejudicial evidence related only to the Current Conspiracy that could show Defendant's identity, intent, plan, and knowledge. According to Defendant, admission of the Government's proffered 404(b) evidence is prejudicial because it is cumulative, because of the similarities and limited temporal separation between the Prior and Current Conspiracies, and because the nature of the evidence may lead the jury to confound the two conspiracies and convict Defendant based on his prior conduct alone. Relatedly, Defendant takes the position that this evidence is of limited probative value where intent cannot be reasonably be challenged

---

evidence proffered in its motion. The Government will be permitted to make a renewed application for admission of other 404(b) evidence should the need arise at trial, or under any other applicable theory.

by the "mountain" of other competent evidence in the Government's possession. (Def. Opp. at 2-5.)

The Court will examine each piece of the Government's proffered evidence in turn and weigh their probative value against the concerns of Rule 403, especially the prospects of confusion, undue consumption of time, and limited temporal separation, as Defendant argues. For the reasons that follow, the Court will grant the Government's motion with respect to admission of limited testimony by Brian Shannon regarding Defendant's involvement in the Prior Conspiracy; copies of checks recovered from banks in the Prior Conspiracy, the Current Conspiracy, and a search of 1218 Decatur Street; and redacted audio of Defendant's recorded confession in January 2012.

### 1. Testimony regarding Defendant's involvement in the Prior Conspiracy

First, the Government seeks to admit testimony from Postal Inspector Shannon regarding Defendant's involvement in the Prior Conspiracy. The Government argues that this evidence (and the other pieces discussed below) is relevant for a proper purpose because it will tend to show that Defendant had the requisite knowledge and intent to commit the charged bank fraud and conspiracy to commit bank fraud offenses in the Current Conspiracy, it demonstrates a "modus operandi" for committing the sort of scheme with which he is charged including a special

skill in altering stolen checks, and because it tends to identify Defendant as a member of the Current Conspiracy when he was under house arrest. (Gov. Mot. at 11-12.) Both of these facts are "of consequence in determining the action," Fed. R. Evid. 401, because both are essential elements in proving the charges against Defendant. United States v. Sampson, 908 F.2d 883, 888 (3d Cir. 1992). In order to obtain a conviction on these charges, the Government will first have to prove that Defendant conspired to commit bank fraud, that he knowingly joined the conspiracy, that he knowingly executed a scheme to defraud a financial institution, and that he had the requisite intent to defraud a financial institution. Testimony regarding Defendant's involvement in the prior conspiracy will not be used to show Defendant's propensity to commit bank fraud, but instead will tend to show that Defendant knew how to effectuate such a scheme, that he had a particular way of doing so (modus operandi), and that he intended to defraud a financial institution by aiding the cashing of these altered checks because he had had the requisite intent before. See United States v. Boone, 279 F.3d 163, 187 (3d Cir. 2002) (upholding the admission of prior crimes evidence where it showed that a defendant was "familiar" with the "practices" of his criminal activity).

7

Defendant objects on the grounds that this evidence is highly prejudicial. Defendant contends that introduction of this evidence will allow the jury to improperly assume that because Muhammad was the leader of the Prior Conspiracy, he must have been involved in the Current Conspiracy as well. Moreover, Defendant takes the position that testimony regarding the Prior Conspiracy from Inspector Shannon in particular will confuse the jury because he will also undoubtedly testify about his investigation of the Current Conspiracy. (Def. Br. at 5.)

In this Court's view, that the Prior Conspiracy is not remote in time to the charged conspiracy enhances its probative value; the Prior Conspiracy in 2012 is not some remote misconduct. Further, unlike some other types of prior acts testimony, which may require proving whether the defendant ever committed the prior act, the Rule 404(b) evidence offered herein faces no challenge as to whether Defendant in fact committed the wrongful prior acts; he has admitted doing so. Moreover, the chance of a time-consuming mini-trial is slim because Defendant has not indicated that he would rebut the underlying Rule 404(b) evidence. If Mr. Muhammad does seek to rebut it at trial, the Government would be in a position to impeach him with his own

written confession and guilty plea statements, which are not part of the present proffer under Rule 404(b).[2]

The Court finds that, balancing the proposed testimony's probative value against its danger of undue prejudice under Rule 403, this testimony, properly limited in scope, should be admitted. Inspector Shannon's testimony goes to essential elements of the Government's case. He, in particular, is competent to describe the similarities between the two Conspiracies, which are probative of Defendant's distinct skills and modus operandi, his identity as a member of the Current Conspiracy, and his mental state. His testimony will be limited in scope to what is necessary to lay a foundation for the admission of the proffered checks associated with Defendant in the Prior Conspiracy and comparison with the similarly altered checks in the Current Conspiracy, as well as the taped statement of Defendant during the investigation of the Prior Conspiracy and a comparison of the Defendant's admissions therein to the evidence in the Current Conspiracy for the purpose of showing modus operandi and absence of mistake, as is discussed in subparts (2) and (3), below. Such testimony of Defendant's conduct in the Prior Conspiracy would also enable the jury to assess whether the incriminating evidence found at Defendant's

---

[2] See n.1, _supra_.

1218 Decatur Street residence belonged to, or were utilized by, the Defendant in the Current Conspiracy, or whether they were simply items that happened to be in a location associated with this Defendant. In other words, this evidence can show an absence of mistake or inadvertence in Defendant's possession of the incriminating evidence seized at his residence. On the other hand, the Shannon testimony shall avoid reference to the facts of Defendant's arrest and conviction,[3] unless elicited on cross-examination. Potential confusion during Inspector Shannon's testimony can be cured by limiting instructions pursuant to Fed. R. Evid. 105, if requested, compartmentalizing the Rule 404(b) testimony both before and after it is given, and instructing the jury of the limited purposes for which they may consider this evidence.

### 2. Copies of checks related to the prior conspiracy and current conspiracy

Next, the Government seeks to introduce copies of checks recovered from victim banks in the Prior Conspiracy and in the Current Conspiracy, and copies of checks recovered from Defendant's home at 1218 Decatur Street due to his home

---

[3] Evidence of Defendant's prior fraud conviction in this Court would likely become admissible in the event Defendant testifies at trial, see Fed. R. Evid. 609(a)(2). Defendant's testimony at trial may also be subject to impeachment by use of his prior statements including his written confession and his guilty plea colloquy in the Prior Conspiracy case, see Fed. R. Evid. 613.

confinement status. [See Gov. Mot. Ex. C-E.] The Government will have to prove at trial that Defendant participated in the Current Conspiracy, even when he could not leave his home at 1218 Decatur Street. According to the Government, these checks tend to show that Defendant was involved in both schemes because of the unique way all of the checks were altered, using asterisks in the payee line and finely scraping the ink printing from the check's face identifying the payee and/or amount. (Gov. Mot. at 12-13.) The Government contends that Defendant's method of alteration is a special skill which indicates Defendant's modus operandi, matching the manner of alteration of the checks in the Current Conspiracy. Moreover, these checks will be relevant to any defense Defendant may try to present that the paraphernalia seized from 1218 Decatur Street (including, inter alia, nearly $11,000 in currency, a typewriter having a carbon ribbon with imprints matching checks found in the Current Conspiracy, stolen mail, and razor blades) had an innocent purpose unrelated to the Current Conspiracy.

Defendant argues that evidence of similarities in the recovered checks is not probative of the identity of the person Derrick Warner referred to as "Boss" or "Bossman" because the similarities in the alteration process are not singular to Defendant; counsel contended at the March 14 hearing that Derek Warner has admitted to altering checks in the same ways, long

before Defendant's involvement in the Prior Conspiracy.
Defendant takes the position that the Government's proffered
evidence only shows that Defendant was the leader of the Prior
Conspiracy, but not that he was involved in the Current
Conspiracy. But Defendant misunderstands Rule 401's test for
relevance. Evidence does not need to conclusively prove a fact
to be relevant; rather, it only need have "any tendency to make
a fact more or less probable than it would be without the
evidence." Fed. R. Evid. 401. While it is true that the
introduction of checks from both Conspiracies and from
Defendant's home does not conclusively show that Defendant and
"Bossman" were one and the same, it does make the shared
identity more likely and substantially narrows the spotlight
upon one resident of 1218 Decatur Street, namely Ibn Muhammad.
Thus, such evidence is highly probative.

    Moreover, the similarities between the checks recovered
from banks and the checks recovered from 1218 Decatur Street
tend to show that Defendant, who admitted altering stolen checks
in the Prior Conspiracy and recruiting others to deposit or cash
them at victim banks, altered checks with the intent of cashing
them and defrauding financial institutions (having been
successful at doing so in the past), and that he had knowledge
of how to pull off such a scheme (again, having been successful
before until he got caught). No prior bad acts evidence is

completely free of the risk of prejudicing a jury, but here, that risk does not substantially outweigh the probative value of the evidence. Here, the distinctive similarities between the altered checks that had been passed in the Current Conspiracy, the recent checks found at Defendant's residence in the Current Conspiracy, and the altered checks that were passed or attempted to be passed in the Prior Conspiracy, are highly probative of Defendant's participation in the Current Conspiracy. Moreover, such 404(b) documentary evidence will not consume much time or distract the jury from its focus on the direct evidence in the present case. The limited purposes for such admissibility will be made clear to the jury by suitable limiting instruction if requested, both before and after the presentation of the Prior Conspiracy checks.

Pursuant to Rule 403, the Court further finds that admitting the relatively few 404(b) altered checks into evidence will not confuse the jury, which will be given limited instructions before and/or after receipt of such evidence, if requested. Nor will undue time be consumed in admitting these 404(b) altered checks. The high probative value of showing the jury the altered checks from the Prior Conspiracy, that the Defendant admitted, with the recent altered checks in the Current Conspiracy found in his residence and obtained from victim banks, given their distinctive characteristics, far

13

outweighs the risk of prejudice or confusion or waste of time. Accordingly, this evidence should be admitted.

### 3. Defendant's recorded arrest statement

Finally, the Government seeks to admit redacted audio recordings of Defendant's statements made upon his arrest in January 2012. [Gov. Ex. 1102T.] The Government represented at the March 14 hearing that it will set aside the video recording of Defendant's interview and the written statement taken by Inspector Shannon, and will redact all references in the audio recordings to custody, criminal charges, whether Defendant would go to jail, and other prejudicial and irrelevant references to Defendant's use of drugs and visits to gentlemen's clubs.[4]

The draft transcript of Defendant's interview provided at the March 14 hearing reveals that this testimony is highly probative of Defendant's modus operandi; he describes in great detail the ways in which he found checks to cash, the ways in which he altered those checks, and the ways in which he instructed others to cash those checks at which financial institutions. He described his alteration skills that helped turn stolen checks into cash. Again, such Rule 404(b) evidence suggests that the evidence uncovered in this case concerning

---

[4] The Government shall provide proposed redactions to the audio transcript and native audio file to Defendant's counsel and to the Court by 14 days before the scheduled June 6, 2016 trial date.

check alteration, including items found in his residence with currency, was not merely a coincidence but rather was likely a further product of his special skills that were part of his "signature crime."

As with the checks themselves, no prior bad acts evidence is completely free of the risk of prejudicing a jury, but here the Court finds pursuant to Rule 403 that risk does not substantially outweigh the probative value of the evidence. The risk of undue prejudice will easily be cured by redacting the audio in the ways suggested by the Government and issuing limiting instructions to the jury. Likewise, there will not be undue consumption of time in playing the redacted audio for the jury, nor will such proof involve a mini-trial as to the prior bad acts; the Defendant has admitted them and described them in this interview. Accordingly, this evidence should be admitted.

## B. Defendant's Motion for Reconsideration of Suppression Motion Denial

Defendant previously submitted a motion to suppress evidence seized from his residence at 1218 Decatur Street on the grounds that the affidavit submitted in support of the search warrant was not supported by probable cause as part of an omnibus pretrial motion filed on October 29, 2014. [Docket Item 33.] The Court denied his motion on October 13, 2015 after holding oral argument, finding, inter alia, that Inspector

15

Shannon's affidavit was supported by probable cause. [Docket Items 57 & 58.]

Defendant now seeks reconsideration of his suppression motion, arguing that newly-discovered evidence demonstrates that the officers who executed the search warrant exceeded its scope when they seized firearms and ammunition from Defendant's home. [Docket Item 85.] The Government opposes, taking the position that the so-called previously unavailable evidence was in fact in Defendant's possession when he filed his first motion to suppress, and that law enforcement officers lawfully seized the firearms and ammunition. [Docket Item 87.] For the following reasons, the Court will deny Defendant's motion.

### 1. Standard on motion for reconsideration

Local Criminal Rule 1.1, and by reference Local Civil Rule 7.1(i), provides that a party may seek reconsideration of a judicial decision where there is "(1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct a clear error of law or prevent manifest injustice." Altana Pharma AG v. Teva Pharm. USA, Inc., Civ. 04-2355, 2009 WL 5818836, at *1 (D.N.J. Dec. 1, 2009) (citing Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)). As this Court has noted, "A motion for reconsideration . . . constitutes an extremely limited procedural vehicle, and does not provide the

16

parties with an opportunity for a second bite at the apple, nor a vehicle to relitigate old matters or argue new matters that could have been raised before the court made its original decision." Grant v. Revera Inc./Revera Health Sys., Civ. 12-5857 (JBS), 2015 WL 794992, at *2 (D.N.J. Feb. 24, 2015) (quotations and citations omitted).

Defendant argues that discovery regarding the circumstances of the search of 1218 Decatur Street was not made available until after the issuance of the Court's order denying Defendant's first motion to suppress, and after the Court appointed Defendant's current counsel. (Def. Mot. at 2-3.) Defendant contends that it was not until a February 12, 2016 meeting between his new counsel, the Government's counsel, and Inspector Shannon that "counsel learned of the circumstances and sequence of the search, how the firearms and ammunition were found and handled, and what certain of the photographs depict." (Id. at 5.) According to Defendant, this new information demonstrates that the firearms and ammunition were outside the scope of the warrant and were not properly seized pursuant to the plain view exception to the warrant requirement.

The Government, on the other hand, contends that this is not new information at all; Defendant was in possession of all of the relevant information to raise this new argument that the firearms and ammunition were unlawfully seized because they were

17

not within the warrant's authorization, and Defendant's prior counsel had foregone multiple invitations from Government counsel to review the physical evidence in the case, when he filed his omnibus pretrial motion in October 2014. These circumstances, the Government argues, provide no basis to grant Defendant's motion for reconsideration.[5] (Gov. Opp. at 3.) Rather, the Government argues, Defendant's motion for reconsideration is merely an attempt to proffer new legal arguments which were not raised by prior counsel before, and are therefore waived.

Defendant presents no cognizable grounds for reconsideration. There is no new evidence, no change of law, and nothing the Court overlooked in denying the prior motion for suppression. The motion presents only a new theory for suppression, not previously made either explicitly or implicitly, arising from circumstances that were known or at least available to prior counsel. That prior counsel chose not

---

[5] In particular, the Government contends that "Defendant was in possession of: (a) the search warrant (listing the items the officers could lawfully seize under the warrant's authority); (b) the affidavit supporting the warrant; (c) a report relating to the execution of the warrant; (d) a detailed inventory listing the items seized and from where they were seized; (e) a chart documenting the 257 stolen checks found during the execution of the search warrant; and (f) 45 photographs taken during the execution of the search (including photographs of the master bedroom, basement, and the seized firearms and ammunition)." (Gov. Opp. at 3.)

to specifically challenge the seizure of the weapons and
ammunition as lying beyond the search warrant, when all the
circumstances of that seizure were available to him, precludes a
second suppression hearing pertaining to the same search.
Further, there would be no end to motion practice if a party
could present its theories seriatim until it gets a successful
outcome or exhausts the process itself. The Defendant's motion
for reconsideration will therefore be denied for lack of good
cause under L. Civ. R. 7.1(i).

### 2. Exceeded scope of warrant

In the event reconsideration is nonetheless required, given
the stakes to the Defendant and recognizing that there could
otherwise be a lingering question whether prior counsel failed
to raise a meritorious challenge to the seizure of the firearms,
the Court will address the new suppression motion. The hearing
was convened on March 14, 2016, and the parties addressed the
merits and the Court reviewed evidence and stipulations of
counsel, as now discussed. Defendant argues that the gun and
ammunition seized from 1218 Decatur Street must be suppressed
because the officers who executed the search warrant violated
the Fourth Amendment they seized those items beyond the scope of
the warrant. It is uncontested that the warrant pursuant to
which the search was conducted did not include firearms or
ammunition, or any generic class of evidence which could include

firearms, on the list of potential types of evidence to be found at 1218 Decatur Street.[6] "The [Fourth Amendment] requirement that warrants shall particularly describe the things to be seized . . . prevents the seizure of one thing under a warrant describing another." United States v. Tracey, 597 F.3d 140, 146 (3d Cir. 2010) (citing Marron v. United States, 275 U.S. 192, 196 (1927)). To the extent that evidence is seized which falls outside the parameters of a warrant, that evidence must be suppressed because warrantless searches are presumptively unreasonable under the Fourth Amendment unless one of the "carefully delineated" exceptions to the warrant requirement apply. Free Speech Coalition, Inc. v. Attorney General, U.S., 787 F.3d 142, 169 (3d Cir. 2015) (quoting California v. Acevedo, 500 U.S. 565, 589 n. 5 (1991); see also United States v.

_____

[6] The warrant listed the following categories as "items that constitute evidence of the commission of criminal offenses including theft of mail, bank fraud, and conspiracy to commit bank fraud":

1. Checks (including business checks, personal checks, and cashier's checks) and envelopes;
2. U.S. Mail;
3. Bank receipts, bank statements, deposit slips, withdrawal slips, ATM cards, ATM receipts, and check books;
4. U.S. Currency;
5. Typewriters, razor blades, computers, household chemical solvents, "white-out," and other office stationary materials used to correct typewritten mistakes;
6. Cellular telephones (associated with Ibn Muhammad) and "land line" telephones (associated with Ibn Muhammad);
7. Maps and printed directions.

(Def. Br. Ex. B, Application for Search Warrant Attachment B.)

Coleman, 805 F.2d 474, 483 (3d Cir. 1986). In this case, the Government contends that the firearms and ammunition fall under the plain view doctrine, one such exception.

### a. Plain view doctrine

The plain view doctrine provides that police may "seize incriminating evidence in plain view during the course of a lawful search because such a seizure 'does not involve an intrusion on privacy.'" United States v. Menon, 24 F.3d 550, 559 (3d Cir.1994) (quoting Horton v. California, 496 U.S. 128, 141, (1990)). For the warrantless seizure of evidence in plain view to be constitutional, the Government must show that three conditions are met: (1) "the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"; (2) "the incriminating character of the evidence must be immediately apparent"; and (3) "the officer must have a lawful right of access to the object itself." Id. at 559 (internal citations omitted). The doctrine applies where "the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." Horton, 496 U.S. at 135; see also United States v. Stabile, 633 F.3d 219, 241–42 (3d Cir. 2011).

Defendant contends that the Government cannot meet its burden to show the first two conditions, and thus the seizure of

the firearm and ammunition fall outside the bounds of the plain view doctrine. According to him, the Government cannot show that law enforcement officers were in a place they could be without otherwise violating the Fourth Amendment when they viewed the firearms and ammunition because the first firearm was found inside a drawer and because photographs show that the firearm was at least partially wrapped in a towel and covered by a bag with the logo of a women's clothing retailer, and because the second firearm was found in a box hidden in the rafters of the basement of 1218 Decatur Street. (Def. Mot. at 6.) Defendant contends that this situation is similar to Arizona v. Hicks, 480 U.S. 321, 324-25 (1987), wherein the Supreme Court held that it constituted an unconstitutional search outside the bounds of the plain view doctrine for an officer to move an object to inspect it. Defendant takes the position that a factual hearing is required in order to confirm the applicability of the plain view doctrine by determining the sequence and circumstances of the search, which officer found the firearms in the drawer and the box, and how, if at all, the firearms were obscured by other items in their respective containers.

In opposition, the Government argues that law enforcement lawfully searched inside the drawer where the firearm and ammunition were found because the "warrant authorized officers to search anywhere in the premises where they might find checks,

mail, receipts, ATM cards, money, razor blades, maps, phones, or even a small bottle of white out" (Gov. Opp. at 4) and "the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found." Maryland v. Garrison, 480 U.S. 79, 84 (1987). The Government further points out the fact that Defendant has proffered no affidavit or other summary of what he would hope to elicit, or what testimony he would be prepared to give, at a testimonial hearing. Furthermore, at the hearing, defense counsel stipulated that Defendant does not contest the Government's representations that the firearms and ammunition were found in the locations indicated by the Government's photographs and search warrant inventory, that Inspectors Shannon and Fenu had knowledge of Defendant's criminal history, and items on Schedule B of the search warrant could fit inside the containers in which the firearms were found.

The Court agrees with the Government, and finds that no further factual hearing is necessary. The officers executing the search of 1218 Decatur Street were authorized by the terms of the search warrant to search wherever they might have probable cause to find the small items listed on Schedule B. Defendant does not dispute that the firearms and ammunition were found in the bedroom drawer and basement box, as the Government's photographs and search warrant inventory indicate. It matters

23

not whether the photograph depicting the firearm in the drawer partially covered by a towel shows the firearm as it was found, or whether the towel completely obscured the gun, or whether the piece of paper shown in the photograph was actually a receipt or not, or when in the sequence of the search officers came upon the bedroom and the basement – in any event, the officers who found the firearms had probable cause to believe that a check, or currency, or a cell phone, or a receipt, or white-out, might be found wrapped in that towel or in a box hidden in the rafters. Unrolling the towel and looking into the secreted box in the rafters were both actions within the search warrant's authorization. Either location could have contained currency or other items on the list of possible evidence of crime contained in the search warrant. Accordingly, the Court finds that the officers who seized the firearms and ammunition at 1218 Decatur Street did not violate the Fourth Amendment in "arriving at the place from which the evidence could be plainly viewed."
Menon, 24 F.3d at 559.

Second, Defendant argues that the Government cannot show that the incriminating nature of the firearms and ammunition was immediately apparent to the law enforcement conducting the search. (Def. Mot. at 7.) The incriminating nature of an object is "immediately apparent" only where law enforcement has probable cause to believe the object in plain view is contraband

24

without conducting any additional search of the object. Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). According to Defendant, the incriminating nature of the firearms and ammunition was not immediately apparent because these objects are not inherently incriminating, because nothing in the search warrant or the other discovery disclosed by the Government demonstrates that the law enforcement on the scene had any reason to know that possessing firearms violated the terms of Defendant's pretrial release, and because no evidence demonstrates that the officers had reason to associate the firearms with Defendant in particular. (Def. Mot. at 7-8.) Without any of this additional knowledge – which could only have been discovered through additional searching – this gun was just a gun and not an incriminating object.

The Government contends that the incriminating nature of these objects was immediately apparent because "the criminality of the seized item is measured by the collective knowledge of the officers on the scene." (Gov. Opp. at 5-6.) It is not required that the Government show that the officer who found the firearm have knowledge of Defendant's criminal record, such that his possession of firearms would violate the terms of his pretrial release or constitute an independent offense under 18 U.S.C. § 922(g). Instead, the Government argues, it is sufficient that at least two of the officers present at the

search, Inspector Shannon and Inspector Fenu,[7] were familiar with
Defendant's criminal history and knew that 1218 Decatur Street
was Defendant's home.[8] The incriminating nature of the firearms
was thus immediately apparent given their knowledge of
Defendant's prior convictions for felony offenses that would

---

[7] According to the Government's briefing, both Inspector Brian
Shannon and Inspector Anthony Fenu were present for the search
of 1218 Decatur Street (Gov. Opp. at 7), and the Government
represented at the March 14 hearing that testimony to that
effect could be offered at trial. Inspector Shannon was familiar
with Defendant, his criminal history, and his residence as the
case agent for the investigation, the affiant for the search
warrant, and the author of the memorandum memorializing the
search [see Gov. Opp. Ex. B], and Inspector Fenu was familiar
with Defendant's criminal history as he had attended Defendant's
December 17, 2012 bail hearing for the Prior Conspiracy before
Magistrate Judge Donio. (Gov. Opp. at 7.)

[8] Inspector Shannon's affidavit sets forth circumstances that
would give the officers executing the search warrant probable
cause to believe that Ibn Muhammad resided at 1218 Decatur
Street, and thus that any objects found there might be his and
subject to constitutional seizure under the plain view doctrine.
Postal Inspector Shannon's probable cause affidavit also
importantly noted that a first class piece of mail addressed to
Ibn Muhammad at 1218 Decatur Street was also intercepted in the
mail on May 17, 2013. (Shannon Aff. ¶3.) Defendant does not take
issue with Shannon's statement of the existence of the first
class letter before he sought authorization of a search warrant.
After Defendant noted at the March 14 hearing that no
documentation confirming Inspector Shannon's affidavit had ever
been produced in discovery, the Government introduced results
from an Accurint Comprehensive Report, a database which collects
both public and non-public information about people, tying
Defendant to the address on Decatur Street and connecting a
phone number known to be associated with Ibn Muhammad to 1218
Decatur Street. [See Gov. Ex. G-R & H.] As such, the Court need
not consider whether items turned up during the course of the
search which further connected Defendant to 1218 Decatur Street
[Gov. Ex. 402, 403Q] gave officers probable cause to seize the
firearms as incriminating objects because they belonged to
Defendant.

render his possession of a firearm illegal. Thus the need to seize the weapon as evidence of a crime of possession of a weapon by a convicted felon was readily apparent. (Gov. Opp. at 7-8.)

The Government is correct in this instance. The Third Circuit has upheld the constitutionality of seizures under the plain view doctrine where the incriminating nature of the objects became clear only given the collective knowledge of all of the officers on the scene during the search and seizure. See Menon, 24 F.3d at 562. Therefore, because the officers at the scene conducting the search collectively had probable cause to believe the firearms and ammunition were immediately incriminating, they are objects which were constitutionally seized under the plain view doctrine exception to the warrant requirement and need not be suppressed. Therefore, upon the merits, this suppression motion is denied.

## IV.  CONCLUSION

An accompanying Order will be entered.


**March 18, 2016**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      Chief U.S. District Judge

27